IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| JAMES WEBB, | ) | |
| | ) | CASE NO. 3:15-CV-59 |
| Plaintiff, | ) | |
| v. | ) | |
| | ) | JUDGE JAMES G. CARR |
| | ) | |
| | ) | MAGISTRATE JUDGE |
| COMMISSIONER OF SOCIAL | ) | KENNETH S. McHARGH |
| SECURITY ADMINISTRATION, | ) | |
| | ) | REPORT & RECOMMENDATION |
| Defendant. | ) | |

This case is before the Magistrate Judge pursuant to Local Rule 72.2(b).  The issue before
the undersigned is whether the final decision of the Commissioner of Social Security
("Commissioner") denying Plaintiff James Webb's ("Plaintiff" or "Webb") applications for
Supplemental Security Income ("SSI") benefits under Title XVI of the Social Security Act, 42
U.S.C. § 1381 *et seq*., and for a Period of Disability and Disability Insurance benefits under Title
II of the Social Security Act, 42 U.S.C. §§ 416(i) and 423, is supported by substantial evidence
and, therefore, conclusive.

For the reasons set forth below, the Magistrate Judge recommends that the decision of the
Commissioner be AFFIRMED.

## I.  PROCEDURAL HISTORY

Plaintiff filed applications for Disability Insurance benefits and Supplemental Security
Income benefits on May 24, 2012, alleging disability due to diabetes, rheumatoid arthritis, sleep
apnea, narcolepsy, high blood pressure, high cholesterol, and obesity, with an onset date of

September 29, 2010.  (Tr. 62, 221, 225). The Social Security Administration denied Plaintiff's applications on initial review and upon reconsideration.  (Tr. 73, 85, 98, 109).

Plaintiff requested that an administrative law judge ("ALJ") convene a hearing to evaluate his applications.  (Tr. 127).  On June 20, 2013, an administrative hearing was held before Administrative Law Judge Nancy M. Stewart ("ALJ").  (Tr. 12, 30-60). Plaintiff and his attorney appeared at the hearing, and Plaintiff testified before the ALJ.  (*Id.*).  A vocational expert ("VE"), Joseph Thompson, also appeared and testified.  (Tr. 12, 30-60).  On August 1, 2013, the ALJ issued a decision finding Plaintiff was not disabled.  (Tr. 30-60).  After applying the five-step sequential analysis,[1] the ALJ determined Plaintiff retained the ability to perform work existing in significant numbers in the national economy.  (*Id.*).  Subsequently, Plaintiff

---

[1] The Social Security Administration regulations require an ALJ to follow a five-step sequential analysis in making a determination as to "disability."  *See* 20 C.F.R. §§ 404.1520(a), 416.920(a). The Sixth Circuit has summarized the five steps as follows:

(1)     If a claimant is doing substantial gainful activity–i.e., working for profit–she is not disabled.

(2)     If a claimant is not doing substantial gainful activity, her impairment must be severe before she can be found to be disabled.

(3)     If a claimant is not doing substantial gainful activity and is suffering from a severe impairment that has lasted or is expected to last for a continuous period of at least twelve months, and her impairment meets or equals a listed impairment, claimant is presumed disabled without further inquiry.

(4)     If a claimant's impairment does not prevent her from doing her past relevant work, she is not disabled.

(5)     Even if a claimant's impairment does prevent her from doing her past relevant work, if other work exists in the national economy that accommodates her residual functional capacity and vocational factors (age, education, skills, etc.), she is not disabled.

*Abbott v. Sullivan*, 905 F.2d 918, 923 (6th Cir. 1990); *Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 534 (6th Cir. 2001).

requested review of the ALJ's decision from the Appeals Council.  (Tr. 7-8).  The Appeals Council denied his request for review, making the ALJ's August 1, 2013, determination the final decision of the Commissioner. (Tr. 1-3).  Plaintiff now seeks judicial review of the ALJ's final decision pursuant to 42 U.S.C. §§ 405(g) and 1383(c).

## II.  EVIDENCE

### A.  Personal Background Information

Plaintiff was born on February 13, 1960, and was 50 years old on the alleged onset date. (Tr. 62).  Plaintiff completed high school and has past work experience as a maintenance worker, a machinist, and a laborer.  (Tr. 72).  Records indicate Plaintiff lived at home with his 80-year-old mother, and received help from his sister; however, Plaintiff testified that, at the time of the hearing, he was living with his daughter.  (Tr. 36, 65).

### B.  Medical Evidence[2]

Medical records indicated that Plaintiff received blood work relating to his diabetes from the Fisher-Titus Medical Center, as well as treatment from the Huron County Health Department, beginning in January of 2011.  (Tr. 299-323).  Plaintiff was treated for various ailments, including diabetes, rectal bleeding and abdominal pain, arm rash, sleep apnea, depression, coughing, wheezing and bronchitis, and back, knee and hip pain. (Tr. 299-318). Notes documented that Plaintiff was obese and did not adhere to his suggested diet, and continued to smoke despite direction to quit.  (Tr.  309-12).  Plaintiff was treated by various medical professionals at the Health Department, including Stephanie Gibson, M.D., who treated

---

[2] The following recital is an overview of the medical evidence pertinent to Plaintiff's appeal.  It is not intended to reflect all of the medical evidence of record.  Plaintiff's challenges to the ALJ's findings relate primarily to his physical impairments.  Accordingly, this summary focuses on medical evidence relating to Plaintiff's physical condition during the relevant period, although the record includes evidence pertaining to Plaintiff's physical and mental impairments.

Plaintiff on various occasions, records of which date back to February 16, 2012. (Tr. 302-04, 314, 374-76). Plaintiff testified at the hearing that Dr. Gibson was his primary care physician, and treatment records showed she referred Plaintiff to specialists for his complaints of knee, hip, back, and neck pain. (Tr. 50, 375-76).

In July and August of 2012, Plaintiff underwent medical imaging and pulmonary functioning tests ordered by the state. (Tr. 324-26, 346). July 11, 2012 imaging results showed slight reversal of normal cervical curvature and disc space narrowing, with minor degenerative changes, and no prevertebral soft tissue swelling. (Tr. 325). The images further showed his right hip remained "within normal limits." (Tr. 325-26). The pulmonary function test, performed August 8, 2012, interpreted by Sushil M. Sethi, M.D., F.C.C.P., showed mildly restrictive pulmonary disease. (Tr. 345).

<u>Pain Management – Dr. Hedaya and Nurse Snyder</u>

On referral from Dr. Gibson, on January 29, 2013, Plaintiff presented to Adam J. Hedaya, M.D., at the Fisher Titus Medical Center for pain management. (Tr. 412). Plaintiff complained of left-sided neck pain, arm pain, low back pain, right knee pain, and right hip pain. *Id.* Plaintiff stated he suffered from severe pain, worse when walking, climbing stairs, twisting and lifting, and coughing, which could lead to blackouts due to extreme pain. (*Id.*). Physical examination revealed tenderness over the cervical spine, with pain to the touch of the left side C5-C6 dermatome, as well as some deltoid and bicep weakness. (Tr. 413). Notes further indicated right knee and hip tenderness, aggravated by hip rotation, as well as weight-bearing and extension of the knee. (*Id.*). Based on his observations, Dr. Hedaya noted he suspected Plaintiff's neck and back pain was due to cervical neuritis and possibly facet related issues and lumbar spondylosis, while his knee and hip pain was likely due to degenerative joint disease. (*Id.*). However,

4

treatment notes showed Dr. Hedaya required imaging for further determination of the causes of Plaintiff's pain. (*Id.*). Dr. Hedaya prescribed a pain relieving gel, noting he would not prescribe narcotic pain medication due to Plaintiff's admitted use of marijuana. (Tr. 413-14).

At a follow-up examination on February 15, 2013, Plaintiff presented to Pamela D. Snyder, CNP, complaining of constant neck and back pain that impacted his physical functioning, family and social relationships, sleep patterns, and mood. (Tr. 423). Examination showed tenderness over his cervical and bilateral buttock regions, his lumbosacral spine, as well as pain in his upper left extremity. (*Id.*). Plaintiff's lumbar spine imaging showed broad-based disc protrusion with bilateral foraminal narrowing, while his cervical imaging showed degenerative disc changes resulting in borderline canal narrowing, specifically at C5/C6. (*Id.*). Findings were otherwise normal and unremarkable, with normal alignment of the cervical spine. (Tr. 390). Nurse Snyder continued Plaintiff on the pain gel, and suggested a trial of Lyrica, and ordered a re-evaluation follow-up in four weeks. (Tr. 423).

Similar findings were documented at Plaintiff's March 12, 2013 follow-up with Dr. Hedaya. He found knee and hip imaging unremarkable, but determined EMGs were consistent with his assessment that Plaintiff's pain was due to cervical and lumbar disc displacement, although the left chronic C5/C6 radiculopathy was found to be moderate in degree. (Tr. 381, 432). Imaging showed no evidence of carpal tunnel, and Dr. Hedaya adjusted Plaintiff's Lyrica and Neurontin levels, and referred him for a TENS evaluation. (Tr. 432).

At a May 3, 2013 follow-up with Nurse Snyder, Plaintiff again complained of constant pain, stated that he had to reschedule a surgical consultation appointment, and that, while he used his TENS unit, he had trouble using it effectively. (Tr. 439). Similar examination results were

documented, and Nurse Snyder prescribed Plaintiff a back brace, instructing him to return in four to six weeks to discuss a possible change in medication following a urine screen.  (Tr. 440).

<u>Dr. Pocos</u>

On January 30, 2013, Plaintiff presented to David A. Pocos, D.O., an orthopaedic surgeon, complaining of bilateral knee and hip pain.  (Tr. 386).  Plaintiff told Dr. Pocos he has had achy pain in his knees for the last two to three years, but had not had any real treatment until recently when he started on Mobic, which he reported was somewhat helpful.  (Tr. 386).  On examination, Dr. Pocos noted Plaintiff was morbidly obese and had very slight varus, some crepitance, and a positive patellar grind bilaterally.  (Tr. 388).  X-ray revealed moderate osteoarthritis in his left knee and mild in his right, and Dr. Pocos diagnosed Plaintiff with bilateral knee osteoarthritis with patellofemoral pain.  (*Id.*).  Hip examination revealed rotation without pain, and no trochanteric tenderness bilaterally.  (*Id.*).  Back examination revelaed a negative bench test, and Dr. Pocos noted a waddling gait with a limp.  (*Id.*).  Plaintiff was continued on Mobic, given a corticosteroid injection, and prescribed a hinged knee brace for support.  (*Id.*).

Plaintiff returned to Dr. Pocos for a follow-up visit on May 8, 2013, complaining of ongoing problems with his neck, despite physical therapy, and stated that his biggest concern otherwise was hip pain.  (Tr. 383).  Dr. Pocos reported there were no real changes to Plaintiff's condition, noting he walked with a cane and significant limp, but with no difficulty in hip range of motion.  (Tr. 383-84).  It was further noted that Plaintiff informed Dr. Pocos that he is awaiting an appointment for neck surgery.  (Tr. 383).

<u>Dr. Siegel</u>

On May 24, 2013, Plaintiff presented to Joel Siegal, MD, a neurosurgeon, due to neck pain, described as constant, sharp, and burning.  (Tr. 395).  Dr. Seigal noted Plaintiff's statements that he starts convulsing when coughing, sometimes leading to blackouts from the pain, and complaints of weakness in his upper extremities, along with pain in his mid-back and left upper extremity.  (*Id.*).  Plaintiff also stated position changes help with the pain, and that it's worse with sitting, lying down, coughing and sneezing, lifting, and range of motion.  (*Id.*). Treatment notes indicated Plaintiff complained of weakness and fatigue, as well as seizures, frequent headaches, and difficulty walking.  (Tr. 396-97).

On examination, Plaintiff was evaluated at 4/5 in the bilateral upper extremity shoulder abductors, biceps, triceps, wrist extensors and flexors, grip strength, and finger abductors, which indicated movement was possible against resistance, although Dr. Siegal noted it was mostly with pain.  (Tr. 398).  After reviewing his MRI and X-rays, Dr. Siegal commented that Plaintiff exhibited C5/C6 disc herniations, with mild C5 degenerative disc disease.  (Tr. 399).  Noting Plaintiff's significant neck pain, Dr. Siegal recommended an anterior cervical disc fusion, but expressed that the surgery may not be an option due to Plaintiff's obesity.  (*Id.*).  Notes further indicated Dr. Siegal recognized cervical radiculopathy, but declined to further comment on the condition.  (*Id.*).

Opinion Evidence

Dr. Gibson

On June 11, 2013, Dr. Gibson completed a physical RFC form.  (Tr. 406-11).  Dr. Gibson presented the opinion that Plaintiff was limited to lifting 10 pounds occasionally, and could sit and stand a total of 2 hours per day, in 30 minute (sitting) and 15 minute (standing) increments. (Tr. 407).  The rest of the 8 hour work day, Plaintiff required positioning in a reclined or lying

down position.  (*Id.*).  Dr. Gibson indicated Plaintiff medically required a cane to ambulate (but did not require two canes), and could walk a total of 1 hour, in fifteen minute increments, but could not walk a block at a reasonable pace on rough or uneven surfaces.  (Tr. 407, 411). Although Dr. Gibson determined Plaintiff cannot climb steps at a reasonable pace using a single hand rail, she included a notation that he can do it slowly.  (Tr. 411).  Dr. Gibson opined Plaintiff could not use his left hand, and could occasionally reach overhead, but frequently reach, handle, and finger with his right hand.  (Tr. 408).  In support of her walking, sitting, and standing limitations, as well as her hand usage limitations, Dr. Gibson pointed to Dr. Hedaya's notes, specifically the EMG testing showing C-5/C6 radiculopathy and his notation that he felt Plaintiff has lumbar spondylosis and lumbar disc displacement.  (Tr. 407-08).  Further, Dr. Gibson opined Plaintiff could frequently climb stairs and ramps, could occasionally balance, stoop, kneel, and crawl, but could never climb ladders or scaffolds, or crouch.  (Tr. 409).  Dr. Gibson also included the limitations that Plaintiff could never be exposed to unprotected heights, extreme cold, or pulmonary irritants, and could never operate a motor vehicle, but can use public transportation. (Tr. 410-11).

State Agency Consultants

On July 11, 2012, state agency consultant Marsha D. Cooper, M.D., performed a physical consultative evaluation on Plaintiff.  Plaintiff complained of knee, back, and neck aches, but denied shortness of breath, coughing and wheezing, as well as seizures or joint swelling, but stated he had numbness in his left hand fingers.  (Tr. 332-33).  On examination, Dr. Cooper indicated primarily normal findings, and noted that Plaintiff presented with a cane, but was able to walk without it.  (Tr. 327-34).  Dr. Cooper stated Plaintiff was overweight and might have early COPD, but was asymptomatic.  (Tr. 334).  She further reviewed and noted X-ray findings

8

that showed a slight C3/C4 disc narrowing, a mild C4/C5 disc narrowing, and minor degenerative changes, but no findings with respect to Plaintiff's right hip.  (*Id.*).  Dr. Cooper opined that, based on her assessment, Plaintiff was capable of sedentary work.  (*Id.*).

On August 21, 2012, state agency medical consultant Sarah Long, M.D., reviewed the evidence of record, including Dr. Cooper's examination notes and opinion.  (Tr. 69-71).  In her RFC analysis, Dr. Long opined that Plaintiff was limited to occasionally lifting or carrying 20 pounds, and frequently 10 pounds, and could stand or walk 6 hours in an 8 hour work day.  (Tr. 70).  Dr. Long recognized Plaintiff's chronic low back pain with normal range of motion, that he used a cane and walked slowly with a limp, and that X-rays of his spine showed minor degenerative changes.  (*Id.*).  Dr. Long noted she considered Plaintiff's pain and discomfort, and that, although she gave Dr. Cooper's conclusion that Plaintiff is capable of sedentary work great weight, she further opined that objective evidence showed Plaintiff is also capable of light work. (*Id.*).  On reconsideration, state agency medical consultant Anne Prosperi, D.O., affirmed the findings of Dr. Long, noting that, although Plaintiff alleged worsening neck pain, he did not complain of neck pain to his treating source at his recent appointment.  (Tr. 95-96).

### III. SUMMARY OF THE ALJ'S DECISION

The ALJ made the following findings of fact and conclusions of law:

1.  The claimant meets the insured status requirements of the Social Security Act through June 30, 2014.

2.  The claimant has not engaged in substantial gainful activity since September 29, 2010, the alleged onset date.

3.  The claimant has the following severe combination of impairments:  degenerative disc disease of the spine; cervical radiculopathy; cervical neuritis; bilateral osteoarthritis of the knees; carpal tunnel syndrome; obesity; sleep disorder; chronic obstructive pulmonary disorder (COPD); and diabetes.

4.  The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1.

5.  After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) specifically:  lifting and/or carrying up to 20 pounds occasionally and 10 pounds frequently, with pushing and pulling within these weight limits, on an occasional basis, as to the lower and upper extremities; standing, walking and sitting, each limited to six hours of an eight-hour work day.  No prolonged walking greater than 30 minutes at a time, with use of a cane when walking if needed.  Ability to stand and stretch one minute at the end of each hour, not to exceed 10% of the workday. No climbing of ladders, ropes or scaffolds, and no crawling; all other postural limited to an occasional basis.  Frequent but not repetitive handling, fingering and feeling. Overhead reaching is precluded.  Avoidance of temperature extremes, and avoidance of concentrated exposure to respiratory irritants such as fumes, odors, dusts, gases, and poor ventilation.  Limited to unskilled work[], simple repetitive or routine tasks.

6.  The claimant is unable to perform any past relevant work.

7.  The claimant was born on February 13, 1960 and was 50 years old, which is defined as an individual closely approaching advanced age, on the alleged disability onset date.

8.  The claimant has at least a high school education and is able to communicate in English.

9.  Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills.

10. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform.

11. The claimant has not been under a disability, as defined in the Social Security Act, from September 29, 2010, through the date of this decision.

(Tr. 14-24).

## IV. DISABILITY STANDARD

A claimant is entitled to receive Disability Insurance and/or Supplemental Security Income benefits only when she establishes disability within the meaning of the Social Security Act.  *See* 42 U.S.C. §§ 423, 1381.  A claimant is considered disabled when she cannot perform "substantial gainful employment by reason of any medically determinable physical or mental

impairment that can be expected to result in death or that has lasted or can be expected to last for a continuous period of not less than twelve (12) months." *See* 20 C.F.R. §§ 404.1505, 416.905.

## V.  STANDARD OF REVIEW

Judicial review of the Commissioner's benefits decision is limited to a determination of whether, based on the record as a whole, the Commissioner's decision is supported by substantial evidence, and whether, in making that decision, the Commissioner employed the proper legal standards. *See Cunningham v. Apfel*, 12 F. App'x 361, 362 (6th Cir. 2001); *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984); *Richardson v. Perales*, 402 U.S. 389, 401 (1971). "Substantial evidence" has been defined as more than a scintilla of evidence but less than a preponderance of the evidence. *See Kirk v. Sec'y of Health & Human Servs.*, 667 F.2d 524, 535 (6th Cir. 1981). Thus, if the record evidence is of such a nature that a reasonable mind might accept it as adequate support for the Commissioner's final benefits determination, then that determination must be affirmed. *Id.*

The Commissioner's determination must stand if supported by substantial evidence, regardless of whether this Court would resolve the issues of fact in dispute differently or substantial evidence also supports the opposite conclusion. *See Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986); *Kinsella v. Schweiker*, 708 F.2d 1058, 1059 (6th Cir. 1983). This Court may not try the case de novo, resolve conflicts in the evidence, or decide questions of credibility. *See Garner*, 745 F.2d at 387. However, it may examine all the evidence in the record in making its decision, regardless of whether such evidence was cited in the Commissioner's final decision. *See Walker v. Sec'y of Health & Human Servs.*, 884 F.2d 241, 245 (6th Cir. 1989).

## VI.  ANALYSIS

### A.  The ALJ's Assignment of Weight to Medical Opinion Evidence is Supported by Substantial Evidence

11

1. <u>Treating Source Analysis – Dr. Stephanie Gibson</u>

When assessing the medical evidence contained within a claimant's file, it is well-established that an ALJ must give special attention to the findings of the claimant's treating source. *See Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544 (6th Cir. 2004). The treating source doctrine recognizes that physicians who have a long-standing treating relationship with an individual are better equipped to provide a complete picture of the individual's health and treatment history. *Id.*; 20 C.F.R. § 404.1527(c)(2). Under the Social Security Regulations, opinions from such physicians are entitled to controlling weight if the opinion (1) "is well-supported by medically acceptable clinical and laboratory diagnostic techniques," and (2) "is not inconsistent with the other substantial evidence in [the] case record." 20 C.F.R. § 404.1527(c)(2).

The treating source's opinions are not entitled to such deference, however, if they are unsupported by the medical data in the record, or are inconsistent with the other substantial evidence in the record. *See Miller v. Sec'y of Health & Human Servs*., No. 91-1325, 1991 WL 229979, at *2 (6th Cir. Nov. 7, 1991) (Table). When the treating physician's opinions are not entitled to controlling weight, the ALJ must apply specific factors to determine how much weight to give the opinion, "including: 'the length of the treatment relationship and the frequency of examination, the nature and extent of the treatment relationship, supportability of the opinion, consistency of the opinion with the record as a whole, and the specialization of the treating source.'" *Simpson v. Comm'r of Soc. Sec*., 344 Fed. App'x 181, 193 (6th Cir. 2009) (*quoting Wilson*, 378 F.3d at 544; *see* 20 C.F.R. § 404.1527(c)(2)-(5). "Additionally, the ALJ 'must provide good reasons for discounting treating physicians' opinions, reasons that are sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to

the treating source's medical opinion and the reasons for that weight.'" *Id.*; *see* 20 C.F.R. § 404.1527(d).  Regardless of how much weight is assigned to the treating physician's opinions, the ALJ retains the power to make the ultimate decision of whether the claimant is disabled. *Walker v. Sec'y of Health & Human Servs.*, 980 F.2d 1066, 1070 (6th Cir. 1992) (*citing King v. Heckler*, 742 F.2d 968, 973 (6th Cir. 1984)).

Despite Plaintiff's assertion to the contrary, the ALJ properly assessed the opinion of Dr. Gibson under the treating source rule.  Subsequent to summarizing the objective medical evidence in her RFC analysis, the ALJ acknowledged Dr. Gibson as Plaintiff's primary care physician, but found some limitations in her opinion were not supported by objective findings on the record.  (Tr. 18-20).  Plaintiff points to a myriad of objective evidence that he argues (1) supports Dr. Gibson's opinion, and (2) was overlooked or ignored by the ALJ.  However, these findings, which predominantly showed mild to moderate impairments, were clearly acknowledged and considered by the ALJ in her RFC analysis, immediately prior to the medical opinion analysis. The ALJ's determination that this evidence did not support Dr. Gibson's opinion was within her discretion, and she was not required to re-state the evidence that was already clearly articulated in the RFC analysis.  *Simpson*, 344 Fed. App'x at 194 ("'The ALJ is not bound to accept the opinion or theory of any medical expert, but may weigh the evidence and draw his own inferences.'") (*quoting McCain v. Dir., OWCP*, 58 F. App'x 184, 193 (6th Cir. 2003)).

Plaintiff's argument that the ALJ did not adequately consider all the requisite factors in her treating source analysis has no merit.  A factor-by-factor analysis is not required where the ALJ's decision clearly conveyed why the opinion was credited or rejected.  *See Francis v. Comm'r of Soc. Sec.*, 414 F. App'x 802, 804 (6th Cir. 2011).  In determining Dr. Gibson's

opinion was entitled to only little weight, the ALJ did a proper analysis and pointed to both internal inconsistencies[3] within Dr. Gibson's opinion, as well as inconsistencies with other evidence of record. (Tr. 20). Dr. Gibson determined Plaintiff was able to walk and stand for only 15 minutes at a time, for 5 hours out of the 8 hour workday, with the remainder of the day spent in a reclined or lying down position. (Tr. 20, 406-07). The ALJ found such severe restrictions in his walking and standing abilities were inconsistent with Dr. Gibson's opinion that Plaintiff was also capable of frequently climbing ramps and stairs, and was able to ambulate with the use of one cane. (Tr. 20, 407-11). Further, the ALJ reasoned that such restrictive limitations were inconsistent with Plaintiff's own reports of daily activities, specifically that he does yard work and gardening. (Tr. 20, 336-38). The undersigned rejects Plaintiff's attempt to re-argue his point that performing yard work and gardening is not inconsistent with such severe limitations in walking and standing, as it was within the ALJ's discretion to determine that a person who regularly performed such activities was capable of standing and walking beyond the limitations provided by Dr. Gibson's opinion. *See Poe v. Comm'r of Soc. Sec., 342 Fed. App'x 149, 157 (6th Cir. 2009)* ("An ALJ does not improperly assume the role of a medical expert by assessing the medical and non-medical evidence before rendering a residual functional capacity.") (*citing Ford v. Comm'r of Soc. Sec., 114 F. App'x 194, 197* (6th Cir. 2004)).

---

[3] The ALJ also indicated she found Dr. Gibson's finding that Plaintiff was capable of using standard public transportation inconsistent with the requirement that Plaintiff travel with a companion for assistance. Without further explanation from the ALJ, the undersigned does not find this to be a compelling reason, as Dr. Gibson's report specified he required a travel companion because he "does not drive," which is not inconsistent with an ability to use public transportation. (Tr. 20, 411). However, because the ALJ provided other inconsistencies and good reasons in support of her determination to give little weight to the opinion of Dr. Gibson, inclusion of this reason is harmless. *See generally Keeton v. Comm'r of Soc. Sec., 583 Fed. App'x 515, 524* (6th Cir. 2014) (finding it appropriate to affirm an ALJ's decision based on mistakes where mistakes constituted harmless error and the "agency would have made the same ultimate finding with the erroneous finding removed from the picture.") (*quoting Berryhill v. Shalala, 4 F.3d 993* (6th Cir. 1993) (*quoting Kurzon v. U.S. Postal Serv., 539 F.2d 788, 796* (1st Cir. 1976))).

Plaintiff's argument that Dr. Gibson's opinion should be given controlling weight because it was consistent with the opinion of Dr. Cooper is not persuasive. Immediately prior to her analysis of Dr. Gibson's opinion, the ALJ clearly considered Dr. Cooper's treatment notes and opinion, which was based on her one-time evaluation. The ALJ concluded that Dr. Cooper's report showed generally normal findings and mild impairments based on objective medical imaging and tests, and also pointed out that Dr. Cooper indicated Plaintiff was able to walk without a cane. (Tr. 20). Plaintiff improperly relies on Dr. Cooper's limitation to only sedentary work—which the ALJ found to be overly restrictive—to support his assertion of consistency between the opinions of Drs. Gibson and Cooper. (Tr. 19-20).

Furthermore, even if the sum of the ALJ's reasons for discrediting Dr. Gibson was insufficient, remand would be inappropriate in this case. The Sixth Circuit has found that if an ALJ does not expressly give good reasons for rejecting the opinion of a treating source, reversal and remand may not be required if the violation is *de minimis*. *Hall v. Comm'r of Soc. Sec.*, 148 F. App'x 456, 462 (6th Cir. 2005) (citing *Wilson*, 378 F.3d at 547). A *de minimis* violation occurs "where the Commissioner has met the goal of 20 C.F.R. § 404.1527(d)(2)—the provision of the procedural safeguard of reasons—even though she has not complied with the terms of the regulation." *Id. (quoting Wilson*, 378 F.3d at 547). An ALJ may meet the goal of the good reasons requirement if he indirectly attacks the supportability of the treating physician's opinions and the consistency of those opinions with the rest of the record evidence. *See Nelson v. Comm'r of Soc.*, 195 F. App'x 462, 470 (6th Cir. 2006) (per curiam). In *Nelson*, the court found that the ALJ's analysis of the record evidence contrary to the treating physicians' opinions adequately addressed the treating physicians' opinions by indirectly attacking both their supportability and their consistency with the other record evidence. *Id.*

15

The ALJ's discussion of record evidence sufficiently attacked the supportability and consistency of Dr. Gibson's opinion, and established that Plaintiff was not as limited as the doctor opined.  First, as explained above, the ALJ provided a thorough account of the medical evidence of record (including objective imaging and testing) that, beyond normal findings, showed only mild to moderate impairments, and that he was able to walk with the use of a cane. (Tr. 18-20).  Second, in her mental health analysis, the ALJ pointed again to Plaintiff's activities of daily living that were not consistent with such severe restrictions in walking and standing, specifically that Plaintiff performed household chores such as cleaning, cooking, and laundry, walked dogs, and completed all outside chores, in addition to gardening and mowing the lawn. (Tr. 21).  Third, the ALJ gave great weight to the state agency opinions that found Plaintiff was capable of light work, which did not support the strict limitations provided in Dr. Gibson's opinion.  (Tr. 22).  Finally, throughout the analysis the ALJ acknowledged that Plaintiff had some limitations due to his conditions and pain, but found such limitations were not disabling and properly accounted for them in the RFC.  (Tr. 17-22).

## 2. State Agency Consultants

Plaintiff's assertion that it was incorrect for the ALJ to attribute greater weight to the opinions of the state agency reviewing physicians over those of his treating source has no basis. "State agency medical consultants are considered experts and their opinions may be entitled to greater weight if their opinions are supported by the evidence." *Hoskins v. Comm'r of Soc. Sec.*, *106 F. App'x 412, 415 (6th Cir. 2004) (citing 20 C.F.R. § 404.1527(f)(2)(i)).*  The Court acknowledges the Sixth Circuit's explanation that "the opinion of a non-examining physician . . . should be given relatively little weight 'if it is contrary to the opinion of the claimant's treating physician.'" *Germany-Johnson v. Comm'r of Soc. Sec.*, 313 F. App'x 771, 766 (6th Cir. 2008).

However, the facts of this case are distinguishable.  In *Germany-Johnson*, the ALJ failed to address the opinion of the claimant's treating physician under the treating source rule, and the treating physician's opinion contradicted the state agency expert's conclusions. *Id.* at 776-77.  As a result, it was error to give greater weight to the opinion of a state agency physician without explaining why such deference was warranted over the treating source.  Conversely, in the present case, the ALJ adequately stated why the treating physician's opinion was not entitled to controlling or substantial weight.

Accordingly, the ALJ's decision to afford the opinions of Dr. Long and Dr. Prosperi great weight was not improper.  "There is no categorical requirement that the non-treating source's opinion be based on a 'complete' or 'more detailed and comprehensive' case record.  The opinions need only be 'supported by evidence in the case record.'" *Helm v. Comm'r of Soc. Sec.*, 405 Fed. App'x 997, 1002 (6th Cir. 2011) (*citing* SSR 96-6p, 1996 WL 374180 (July 2, 1996)) (internal page numbers omitted).  Plaintiff argues these opinions should not be afforded weight because (1) the consultants rendered the opinions at a period when Plaintiff had no insurance and, therefore, only limited medical care, and (2) they did not review the medical records after October of 2012, which included the opinion of Dr. Gibson, records from specialists, and medical imaging.  However, the ALJ reasoned that these opinions were well-supported by both objective and subjective evidence, and the undersigned finds no reason to disturb her conclusion. (Tr. 22).  The ALJ noted that, despite a lack of insurance, Plaintiff had consistent medical care, which included imaging provided by the state.  (Tr. 17).  Further, medical evidence after October 2012, which the ALJ thoroughly discussed in the RFC analysis, showed predominantly normal and mild to moderate findings.  (Tr. 17-22).  Plaintiff fails to point to any supporting evidence

that was not properly considered by the ALJ, or that definitively undermines the supportability of the state agency opinions.

**B.  The ALJ Properly Assessed Plaintiff's Credibility**

It is the ALJ's responsibility to make decisions regarding the credibility of witnesses, and the ALJ's credibility determinations are entitled to considerable deference.  *See Vance v. Comm'r of Soc. Sec.*, 260 F. App'x 801, 806 (6th Cir. 2008) (*citing Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 531 (6th Cir. 1997)).  In evaluating a claimant's subjective complaints of pain, this Circuit has established a two part test.  *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 243, 243 (6th Cir. 2007).  The ALJ must consider (1) whether the objective medical evidence supports a finding of an underlying medical condition, and (2) whether the objectively established medical condition is of a level of severity that it can reasonably be expected to produce the claimant's alleged symptoms.  *Duncan v. Sec'y of Health & Human Servs.*, 801 F.2d 847, 853 (6th Cir. 1986)*; Felisky v. Bowen*, 35 F.3d 1027, 1038-39 (6th Cir. 1994).  The ALJ should consider the following factors in evaluating the claimant's symptoms:  the claimant's daily activities; the location, duration, frequency, and intensity of the claimant's symptoms; any precipitating or aggravating factors; the type, dosage, effectiveness, and side effects of any medication taken to alleviate the symptoms; treatment, other than medication, the claimant received to relieve the pain; measures used by the claimant to relieve symptoms; and statements from the claimant and the claimant's treating and examining physicians.  *Rogers,* 486 F.3d at 247; *see Felisky,* 35 F.3d at 1039-40; SSR 96-7p, 1996 WL 374186 (July 2, 1996).

Plaintiff's argument that the ALJ failed to evaluate his symptoms and credibility under the six factors set forth in the regulations does not have merit.  The regulations do not mandate a discussion of all of the relevant credibility factors; an ALJ may satisfy his obligations by

18

considering most, if not all, of the factors.  *See Bowman v. Chater*, 132 F.3d 32 (Table), 1997 WL 764419, at *4 (6th Cir. Nov. 26, 1997) (per curiam).  Furthermore, Plaintiff does not cite to—and the Court is unaware of—any authority that would require the ALJ to set forth the list of relevant factors in her opinion or to discuss each of those factors in detail.

The ALJ sufficiently considered the requisite factors and properly assessed Plaintiff's credibility.   The ALJ discussed Plaintiff's allegations in detail, recognizing Plaintiff's medically determinable impairments.  (Tr. 17-18, 22).  However, she found his allegations as to the extent of the restrictions caused by his symptoms were not consistent with the medical evidence on the record, as fully described in the RFC analysis.  (Tr. 17-22).  The ALJ also noted that, despite Plaintiff's reports of being unable to afford to go to the doctor or to take pain medication, the record showed Plaintiff received consistent medical treatment through the county, and obtained pain medication, including a TENS unit, in April of 2013.  (Tr. 17, 250, 279, 301-23, 373-78). Further, although she found Plaintiff's allegations to be considerably more limiting than was supported by the evidence, the ALJ did not wholly reject Plaintiff's complaints of pain and functional difficulties.  (Tr. 22).  Rather, she evaluated them based on the entire record, considering Plaintiff's statements along with the objective and subjective evidence, as well as his reported daily activities.  (Tr. 17-22).   Thus, to the extent that Plaintiff contends the ALJ failed to assess his credibility in light of the relevant factors, this assignment of error is not well taken.

The undersigned further finds no basis to Plaintiff's argument that the ALJ improperly formulated the RFC prior to assessing his credibility.   The ALJ stated her final RFC determination immediately prior to a detailed narrative explaining how she reached her conclusions.  Plaintiff fails to point to any evidence or authority supporting his allegation that this format, which is not uncommon in social security ALJ decisions, indicates the RFC was

determined prior to consideration of certain evidence.  Additionally, the ALJ clearly stated at the end of the RFC analysis that she considered Plaintiff's complaints and included them in the RFC, to the extent they were consistent with the evidence as a whole.  (Tr. 22).  This statement is directly contrary to Plaintiff's argument, as it shows the ALJ found some of Plaintiff's complaints credible, and subsequently accounted for them in the RFC.

**C.  The ALJ Properly Evaluated Statements Submitted by Plaintiff's Family Members**

Plaintiff argues the ALJ did not properly evaluate the written statements provided by Plaintiff's sisters and mother expressing their knowledge and observations of his health and functional abilities.  "While the ruling notes that information from 'other sources' cannot establish the existence of a medically determinable impairment, the information 'may provide insight into the severity of the impairment(s) and how it affects the individual's ability to function.'"  *Cruse v. Comm'r of Soc. Sec.*, 502 F.3d 532 (6th Cir. 2007) (*quoting* SSR 06-03p, 2006 WL 2329939, at *3 (Aug. 9, 2006)).  The ALJ has discretion to determine the appropriate weight to assign such evidence, and, after consideration of the appropriate factors, "should explain the weight given to opinions from these 'other sources,' or otherwise ensure that the discussion of the evidence in the determination or decision allows a claimant or subsequent reviewer to follow the adjudicator's reasoning."  SSR 06-03p, at *6.

What an ALJ must consider for "other sources" depends on the nature of the source.  SSR 06-03p differentiates between opinions of medical sources that are not considered "acceptable medical sources," non-medical sources that have witnessed the claimant in a professional capacity, and non-medical sources that have not witnessed the claimant in a professional capacity, such as family members and friends.  SSR 06-03p.  For sources such as family members, the regulations establish it is "appropriate to consider such factors as the nature and

20

extent of the relationship, whether the evidence is consistent with other evidence, and any other factors that tend to support or refute the evidence." SSR 06-03p, at *6.

Here, the undersigned finds that the ALJ provided sufficient explanation reflecting appropriate analysis of the evidence submitted by Plaintiff's mother and sisters. An ALJ is not required to give any more deference to opinions from "other" sources other than to consider the opinions and weigh them along with all other evidence in the record. *See Walters,* 127 F.3d at 531. The ALJ clearly considered the letters, and stated they provided witness evidence relating to Plaintiff's "decline in health," as expressed by his family members. The ALJ explained she did not find the statements fully credible due to the nature of the familial relationship, and that none of the witnesses were medical experts. (Tr. 18). As was within her discretion, the ALJ further found the opinions credible only to the extent that they were consistent with the limitations provided in the RFC, which was supported by other substantial evidence of record. (*Id.*); *see Hoskins,* 106 Fed. App'x at 415 ("Credibility determinations rest with the ALJ.") (*citing Siterlet v. Sec'y of Health & Human Servs*., 823 F.2d 918, 920 (6th Cir. 1987)). Plaintiff fails to point to any authority or other evidence that suggests that the ALJ's explanation, although brief, did not sufficiently allow Plaintiff and subsequent reviewers to follow her reasoning in her consideration of this non-medical evidence. Accordingly, Plaintiff's argument that the ALJ did not properly assess this evidence is rejected.

## VII. DECISION

For the foregoing reasons, the Magistrate Judge finds that the decision of the Commissioner is supported by substantial evidence. Accordingly, the undersigned recommends that the decision of the Commissioner be AFFIRMED.

s/ Kenneth S. McHargh
Kenneth S. McHargh
United States Magistrate Judge


Date:  January 25, 2016.




ANY OBJECTIONS to this Report and Recommendation must be filed with the Clerk of Courts within fourteen (14) days after the party objecting has been served with a copy of this Report and Recommendation.  28 U.S.C. § 636(b)(1).  Failure to file objections within the specified time WAIVES the right to appeal the Magistrate Judge's recommendation.  *See Thomas v. Arn*, 474 U.S. 140 (1985), *reh'g denied*, 474 U.S. 1111 (1986); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).